[No. S078199. Aug. 20, 2001.]

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff and Appellant, v.
ROBERT S. et al., Defendants and Respondents.

## COUNSEL

LaTorraca and Goettsch, Raymond H. Goettsch and Scott K. Murch for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Irving H. Greines and Edward L. Xanders for Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange as Amici Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger, H. Thomas Watson and Andrea M. Gauthier for 20th Century Insurance Company as Amicus Curiae on behalf of Plaintiff and Appellant.

Howard J. Fox for Defendants and Respondents Robert S., Kelly S., Christy Mitchell and Timothy Mitchell.

Law Offices of Kapp L. Johnson and Kapp L. Johnson for Defendant and Respondent Velvet S.

Steven W. Murray for Rita and Virgil Palub as Amici Curiae on behalf of Defendants and Respondents.

Law Offices of Ian Herzog, Evan D. Marshall, Ian Herzog; Mark B. Robinson, Jr.; Roland Wrinkle; Harvey R. Levine; Robert Steinberg; Thomas G. Stolpman; William D. Turley; Mary E. Alexander; Joseph Harbison III; Bruce Broilett; Wayne McClean; Leonard Sacks, Tony Tanke; Lea-Ann Tratten; Steven J. Keifield; David Rosen; Moses Lebovits; Douglas Devries;

Christine Spagnoli; James Sturdevant; Daniel U. Smith; Deborah David; Lawrence Drivon; Thor Emblem; Rick Simons; and David Casey, Jr., for Consumer Attorneys of California as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

KENNARD, J.—When a homeowners policy expressly covers accidental bodily injury but excludes coverage for bodily injury arising out of an "illegal act," is the insurer obligated to defend and indemnify its insureds in a wrongful death action brought against them after their teenage son *accidentally* shot and killed his friend? We conclude that, in the context of the policy as a whole, the insurer does have such an obligation.

I

On March 10, 1995, 16-year-old Kelly S. and some of his friends were at Kelly's home when Kelly found a .22-caliber Beretta handgun in his mother's coat pocket. Kelly's father had taught him how to handle a 9-millimeter Beretta. Taking the same precautions he would have taken to unload a 9-millimeter Beretta, Kelly removed the clip from the handle of the .22-caliber Beretta, placed the clip on a table, and pulled back the slide on the gun. Believing the gun to be unloaded, Kelly pulled the trigger. The gun fired, killing his friend, Christopher Mitchell.

A petition alleging Kelly's commission of involuntary manslaughter, a felony (Pen. Code, § 192, subd. (b)), was filed in juvenile court (Welf. & Inst. Code, § 602). The court sustained the petition, made Kelly a ward of the court, and placed him on probation.

Timothy and Christy Mitchell, the parents of Christopher, brought a wrongful death action against Kelly and his parents, who tendered defense of the action to Safeco Insurance Company of America (Safeco) under their homeowners insurance policy. Safeco undertook the defense under a reservation of rights.

Safeco then brought this action in superior court seeking a declaration that it had no duty to defend or indemnify its insureds because the policy excluded coverage for an "illegal act." Named as defendants were the insureds and the Mitchells. Safeco unsuccessfully moved for summary judgment, contending that the accidental killing of Christopher fell within the policy exclusion for an "illegal act."

Thereafter Christy Mitchell, joined by the insureds, moved for summary judgment contending that Safeco as a matter of law had a duty to defend and indemnify. The trial court granted the motion, ruling that the policy's "illegal act" exclusion could reasonably be interpreted as excluding coverage only for an *intentional* illegal act. The court found it was "undisputed that Kelly S[.] did not intend to cause harm to Mitchell's son [and] that [Kelly] did not intend to commit an unlawful or 'illegal' act." Accordingly, the court ruled that the Mitchells' wrongful death claim was potentially covered by the insureds' policy, giving rise to Safeco's duty to defend. Safeco appealed.

The Court of Appeal reversed the trial court's judgment. Relying on a dictionary definition of "illegal" as meaning "not according to or authorized by law; unlawful," the Court of Appeal concluded that the illegal act exclusion in the policy precluded coverage for any act in violation of civil or criminal law, whether or not the person committing the act intended to cause harm or to violate the law, but that it did not exclude coverage for ordinary civil negligence. Applying this understanding of the scope of the policy's illegal act exclusion, the court held that the policy did not provide coverage for an act causing death that resulted in a juvenile court adjudication of involuntary manslaughter.

We granted the separate petitions for review filed by the insureds and Christy Mitchell.

## II

The homeowners policy at issue here covered the period June 30, 1994, through June 30, 1995. The accidental shooting occurred in March 1995. Under the terms of the policy, Kelly and his parents are insureds.

Relevant here are these policy provisions: Safeco agreed to defend and indemnify the insureds in the event of claims brought against any insured for bodily injury caused by "an occurrence," which the policy defined as an accident resulting in bodily injury during the policy period. Excluded from coverage was liability for bodily injury "arising out of any *illegal act* committed by or at the direction of an insured." (Italics added.) The policy did not define the term "illegal act."

We now turn to the task of stating the controlling principles of insurance contract interpretation and applying them to the policy here.

## III

Insurance policies are contracts and therefore subject to the rules of construction governing contracts. (*Bank of the West v. Superior Court* (1992)

2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties. (Civ. Code, § 1636; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

■ A policy provision is ambiguous when it can have two or more reasonable constructions. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) An ambiguity " 'is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. [Citation.] If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty° to exist. [Citation.]' [Citation.] 'This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, "the objectively reasonable expectations of the insured." ' " (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667 [42 Cal.Rptr.2d 324, 913 P.2d 878].) "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 879 [103 Cal.Rptr.2d 1, 15 P.3d 223].)

■ The homeowners policy here excluded coverage "arising out of any *illegal* act committed by or at the direction of an insured." (Italics added.) The phrase "illegal act" is susceptible of two reasonable meanings. As mentioned earlier, the Court of Appeal, relying on a dictionary definition, construed the term broadly, as meaning any act prohibited by law. But the term can also be interpreted more narrowly as meaning a violation of criminal law. This is the construction Safeco urges us to adopt. Certain thesauruses do treat the term "illegal" as synonymous with "criminal." (See, e.g., Burton, Legal Thesaurus (1980) p. 257 [stating that "against the law" and "criminal" are synonyms of "illegal"]; Webster's Collegiate Thesaurus (1976) p. 414 [stating that "criminal" is a synonym of "illegal"].) If we were to adopt this meaning in the context of the policy here, we would have to treat the policy's clause excluding coverage for an "illegal act" as the equivalent of a clause excluding coverage for a "criminal act."

The policy before us, however, contains not a *criminal act* exclusion but an *illegal act* exclusion. Had Safeco wanted to· exclude criminal acts from coverage, it could have easily done so. Insurers commonly insert an exclusion for criminal acts in their liability policies. (Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶¶ 7:331.5, 7:2256, pp. 7A-86, 7I-23 (rev. #1, 2000).) Because Safeco chose not to have

a criminal act exclusion, instead opting for an illegal act exclusion, we cannot read into the policy what Safeco has omitted. To do so would violate the fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted. (Code Civ. Proc., § 1858; *Jensen v. Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 790 [345 P.2d 1]; *Jacobson v. Simmons Real Estate* (1994) 23 Cal.App.4th 1285, 1294 [28 Cal.Rptr.2d 699].)[1]

We now consider the Court of Appeal's construction of the term "illegal" as meaning violation of *any* law, whether civil or criminal. (See, e.g., Webster's 9th New Collegiate Dict. (1989) p. 599 ["not according to or authorized by law; unlawful"]; Webster's New World Dict. (2d college ed. 1982) p. 699 ["prohibited by law; against the law; unlawful; illicit; also, not authorized or sanctioned, as by rules"]; Black's Law Dict. (5th ed. 1979) p. 673, col. 2 ["against or not authorized by law"]; see Evid. Code, § 160 [" 'Law' includes constitutional, statutory, and decisional law"].) That construction, however, is so broad as to render the policy's liability coverage practically meaningless.

For instance, a violation of "any law" would include the law governing negligence, which holds individuals responsible for the failure to exercise ordinary care resulting in injury to another. (Civ. Code, § 1714 ["Every one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill . . . ."].) The duty to exercise ordinary care is imposed by law. (See *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188-1889 [91 Cal.Rptr.2d 35, 989 P.2d 121].) A violation of that duty is therefore *a violation of law.* Broadly construed, a violation of *any* law, whether civil or criminal, is an illegal act. An insured's negligent act, being a violation of law and therefore *an illegal act,* would thus not be covered under Safeco's policy excluding coverage for an insured's illegal acts.

But the homeowners policy that the insureds here bought from Safeco expressly provided that Safeco would defend and indemnify them for bodily

---

[1]The concurring and dissenting opinion is mistaken in its reliance on *20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333 [74 Cal.Rptr.2d 492]. (Conc. & dis. opn. of Baxter, J., *post,* at pp. 768-769.) That case involved a criminal act exclusion (63 Cal.App.4th at p. 1336), a policy provision that is *not* before us in this case. In addition, the death in *20th Century* occurred after the insured placed one bullet in a revolver and pulled the trigger three times. The third time the insured pulled the trigger he was pointing the gun at the victim; it fired and killed the victim. The Court of Appeal, after noting that the case did not involve negligence, mistake, or inadvertence, concluded that the insured's conduct "could be considered to have been committed with implied malice and therefore have constituted second degree murder." (*Id.* at p. 1339.) Here, there is no evidence that Kelly S. acted with implied malice when, after taking steps that he believed would *unload* the gun, he *accidentally* shot and killed Christopher Mitchell.

injury caused by "an occurrence," which the policy defines as "an accident . . . which results, during the policy period, in bodily injury or property damage." Because the term "accident" is more comprehensive than the term "negligence" and thus includes negligence (Black's Law Dict., *supra*, at p. 14, col. 2), Safeco's homeowners policy promised coverage for liability resulting from the insured's negligent acts. That promise would be rendered illusory if, as discussed above, we were to construe the phrase "illegal act," as contained in the policy's exclusionary clause, to mean violation of any law, whether criminal or civil. ▉ When reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and capable of being carried into effect, and that is consistent with the parties' intent. (Civ. Code, § 1643; see *Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].)

The Court of Appeal attempted to give the policy a practical and workable construction by drawing a distinction between negligence involving the failure to exercise ordinary care, which the court viewed as falling outside the illegal act exclusion, and gross negligence involving a punishable public offense, which the court considered to be within the policy's exclusion. After stating that the exclusion was not limited to liability arising out of a criminal conviction or criminal act, the Court of Appeal stated that "while the failure to exercise ordinary care may result in the imposition of an obligation to provide compensation for any loss caused by one's negligence, such failure to exercise ordinary care is not 'illegal.' " It then concluded that the "specific act at issue in the present case, involuntary manslaughter, falls into an entirely different category, involving as it did gross negligence and the commission of a punishable, public offense." We disagree with that analysis.

It is not clear how the Court of Appeal defined the word "illegal" as it is used in the exclusionary clause. If the Court of Appeal construed the exclusionary clause as excluding every offense, that is, every crime, it defines the word "illegal" as meaning "criminal." As we have seen, that definition is inappropriate here because it rewrites the policy by inserting what has been omitted. Drawing a distinction, as the Court of Appeal did, between negligent acts and grossly negligent acts exceeds the bounds of construction by rewriting the policy. The word "illegal" is not a synonym for "gross negligence."

As we noted earlier, "ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." (*Kazi v. State Farm Fire & Casualty Co., supra,* 24 Cal.4th at p. 879.) An insured should not be expected to know the subtle legal distinctions between the concepts of

ordinary negligence and gross negligence. Such distinctions are not objectively within the reasonable expectations of the insured.[2]

Also, to draw a distinction between negligent and grossly negligent acts, as the Court of Appeal did, would be at odds with Insurance Code section 533. Under that provision, an "insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the *negligence* of the insured . . . ." (*Ibid.*, italics added.) The statute does not distinguish between ordinary and gross negligence. ▮▮▮▮ Therefore, an insurer intending to exclude from a homeowner's policy coverage for gross negligence would have to say so in express terms, instead of, as here, using the ambiguous phrase "illegal act." The " 'burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' " (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 202 [110 Cal.Rptr. 1, 514 P.2d 953].)

Safeco would have us give effect to the policy's illegal act exclusion in this case, despite the absence of any satisfactory definition of the word "illegal," because any insured would reasonably expect that an accidentally caused death resulting in a conviction for involuntary manslaughter would fall within the policy's "illegal act" exclusion. Safeco's view leaves the exclusionary clause without meaning until after an event has occurred. This violates the rule that expectations of the insured are examined at the time the contract is made. (Civ. Code, §§ 1636, 1649; *Montrose Chemical Corp. v. Admiral Ins. Co., supra,* 10 Cal.4th at p. 666.) Moreover, an insured's objectively reasonable expectations are measured not by an insured's knowledge of the nuances of criminal law, but by what an insured would expect to be covered by the policy. The proper inquiry is: Would reasonable insureds expect their homeowners policy to protect them against liability for accidental injury or death occurring in their home? The answer is yes.

In short, because the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid. (Civ. Code, § 1653.)

Finally, we reject Safeco's contention that Civil Code section 1668 relieves it of any duty to indemnify the insureds for liability resulting from

---

[2]The concurring and dissenting opinion discusses at length the effect of the "Severability of Insurance" clause in the policy on the illegal act exclusionary clause. (Conc. & dis. opn. of Baxter, J., *post,* at pp. 772-777.) It acknowledges, however, that there is a significant division of authority among the courts that have addressed this question. (*Id.* at pp. 772-775 & fn. 3.) Our conclusion makes it unnecessary to address this additional issue, a matter that plaintiffs did not raise or address in their briefs to this court and that Safeco only alluded to in its answering brief and discussed in abbreviated form in its response to one of the amicus curiae briefs.

Kelly's accidental killing of Christopher Mitchell. Section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Section 1668 applies to contractual exemptions from liability, not to indemnity contracts. (*State Farm Fire & Casualty Co. v. Eddy* (1990) 218 Cal.App.3d 958, 967 [267 Cal.Rptr. 379]; *Lemat Corp. v. American Basketball Assn.* (1975) 51 Cal.App.3d 267, 278-279 [124 Cal.Rptr. 388].) An insurance policy is an indemnity contract. (Ins. Code, § 22.) Thus, section 1668 simply does not apply here.

For the reasons given above, we conclude that the Mitchells' wrongful death action is within the liability coverage of the homeowners policy at issue here.

DISPOSITION

The judgment of the Court of Appeal is reversed with directions to enter judgment affirming the judgment of the trial court.

George, C. J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.—Though my reasons differ from the majority's, I agree with their conclusion that the "illegal act" exclusion in Safeco's policy did not deprive Kelly S.'s *parents* of liability coverage for their son's fatal shooting of Christopher Mitchell. I respectfully dissent, however, from the majority's determination that, despite the policy's explicit refusal to cover an insured for his or her "illegal act," the policy nonetheless covered *Kelly himself* for his criminal homicide.

On the latter point, I accept, for purposes of argument, that an "illegal act" could mean something *broader* than a "criminal act," a more common form of coverage exclusion. There may be situations that would strain the outer limits of an illegal act exclusion in a policy designed to afford coverage for accidental injuries. Finally, I do not doubt that all reasonable uncertainty about the phrase's meaning must be resolved against the insurer, which drafted the policy, and in favor of coverage a policyholder would reasonably expect. Hence, I am satisfied that the illegal act exclusion cannot contravene the parties' basic understanding that coverage would be afforded for an insured's ordinary negligence.

But Kelly cannot benefit from even the *narrowest* reasonable interpretation of the illegal act exclusion. An exclusion for illegal acts must apply

wherever a criminal act exclusion would apply; any criminal act is also illegal, and no layperson would understand otherwise. Moreover, even if the meaning of "illegal" might be uncertain when applied to particular facts, it cannot be so here. An illegal act exclusion must at least have been intended, and understood, to withdraw liability coverage from an insured who, by recklessly pointing and shooting a loaded firearm, committed the grave felony offense of manslaughter.

Such a conclusion does not undermine the purposes of an insurance policy intended to afford liability coverage for accidental injuries. Nor does it defeat the insured's reasonable expectations of coverage. A policyholder found guilty of criminal homicide under such circumstances could hardly expect that his or her tort liability for the killing somehow falls outside an explicit exclusion for "illegal acts."

The majority discount a recent Court of Appeal decision, *20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333 [74 Cal.Rptr.2d 492] (*20th Century*), that illustrates this point. There, during a party, 19-year-old Matthew Guglietti, while intoxicated, took a revolver from his parents' bedroom and inserted one bullet. He pointed the gun at a friend and pulled the trigger, then pointed the gun at his own head and pulled the trigger again. The next day, as the party continued, Guglietti, still intoxicated, retrieved the revolver. He pointed the gun at victim DiGeronimo and pulled the trigger once more. The weapon discharged, wounding DiGeronimo fatally. To avoid murder charges, Guglietti pled guilty to voluntary manslaughter with personal use of a firearm.

Edwina Stewart, DiGeronimo's mother, sued Guglietti for wrongful death. Guglietti, an insured under his parents' homeowners policy, tendered his defense to the insurer. The policy excluded coverage for injury foreseeably resulting from an insured's "criminal act." (*20th Century, supra,* 63 Cal.App.4th at p. 1336.) The insurer accepted the defense under a reservation of rights but sued Stewart, Guglietti, and Guglietti's parents to determine coverage. Thereafter, the insurer won a declaratory judgment that no coverage was afforded.

The Court of Appeal affirmed. As the court explained, "Stewart contends the [p]olicy's criminal act exclusion is ambiguous" (*20th Century, supra,* 63 Cal.App.4th 1333, 1337) and "has proffered several factual circumstances which, if applicable, arguably would subject the [p]olicy's criminal act exclusion to several reasonable interpretations." (*Id.,* at p. 1338.) "However," the court emphasized, "she does not suggest alternative reasonable interpretations *under the facts of this case.*" (*Ibid.,* italics added.) As the court

noted, Guglietti's action had resulted in his conviction of a serious felony, eliminating any doubt whether the conduct at issue came within the meaning of "criminal act" as used in the policy. (*Ibid.*)

Moreover, the court observed, even if the exclusion might be deemed ambiguous, there could be "no reasonable expectation that the [p]olicy covered liability for Guglietti's killing of DiGeronimo. Stewart posits that the criminal act of . . . manslaughter is based on and really nothing more than negligence and that an insured would reasonably expect the [p]olicy would cover injury caused by an insured's negligence. [¶] [But] Stewart's characterization of Guglietti's action as . . . based or premised on [mere] negligence trivializes his conduct. This is not a case in which a [firearm] was negligently mishandled and fired by mistake or inadvertence. Guglietti deliberately and intentionally pointed the revolver at DiGeronimo and deliberately and intentionally pulled the trigger. . . . [¶] Under these circumstances we conclude the insured could not reasonably have expected the [p]olicy's coverage for injury caused by negligence to have covered Guglietti's criminal act." (*20th Century, supra,* 63 Cal.App.4th 1333, 1338-1339, fn. omitted.)

Here, as in *20th Century,* there can be no claim that the phrase "illegal act" is ambiguous *as applied to this case.* Kelly's fatal shooting of Christopher Mitchell comes within any reasonable understanding of the policy's exclusionary clause. In a juvenile proceeding instituted for that purpose, it was found beyond reasonable doubt that Kelly's act constituted the serious felony offense of manslaughter. (Pen. Code, §§ 192, 193.) As noted above, when the killing of another is adjudged a serious violation of the *penal law,* an ordinary layperson would certainly understand the conduct to be *illegal.*

For similar reasons, Kelly had no reasonable expectation that, despite the exclusion for "illegal act[s]," he was covered for his criminal homicide. Urging the contrary, defendants suggest the tragedy was simply a negligent accident, in that Kelly tried to unload the weapon, thought he had disabled it, and intended no harm. But, as in *20th Century,* this characterization trivializes the seriousness of the unlawful conduct at issue. Here, as there, the victim was not killed by the mere negligent mishandling of a gun that caused it to fire inadvertently. Instead, it is undisputed that Kelly brandished the gun, pointed it in the general direction of Christopher's head, and deliberately pulled the trigger.

Even if Kelly thought the weapon was unloaded and intended no injury, he committed a wilful and potentially lethal act without "due caution and circumspection" (Pen. Code, § 192, subd. (b)). Because of the obvious

danger, it is universal knowledge that one must never engage the firing mechanism of a gun while aiming it anywhere near another human being. Laypersons also know it is a serious crime to injure or kill another by the reckless mishandling of a firearm. In the face of an exclusion for illegal acts, Kelly's expectation that the policy covered his ordinary negligence could not include the reasonable belief that he would be covered for his reckless shooting of Christopher, which led to an adjudication he was guilty of the felony of manslaughter.[1]

The majority decline to accept this logic, and therefore to find the exclusion applicable to Kelly. Instead, they conclude that because the illegal act exclusion might be difficult to apply in *some* factual situations, it is simply null and void in *every* case, including one where its application is beyond debate.

The majority offer meager support for this sweeping conclusion. They suggest that to apply the exclusionary clause to these facts, when its meaning might be uncertain in other cases, would violate the rule that "expectations of the insured are examined at the time the contract is made. (Civ. Code, §§ 1636, 1649; *Montrose Chemical Corp. v. Admiral Ins. Co.* [(1995)] 10 Cal.4th [645,] 666 [42 Cal.Rptr.2d 324, 913 P.2d 878].)" (Maj. opn., *ante,* at p. 766.) Not so. As indicated above, from the inception of the contract, an insured could only have expected that the illegal act exclusion would bar coverage for his or her criminally reckless homicide resulting in a conviction for manslaughter. Contrary to the majority's assertion, a lay policyholder was not required to appreciate "subtle legal distinctions" to reach that understanding. (*Id.,* at p. 765.)

The majority posit that "because the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid. (Civ. Code, § 1653.)" (Maj. opn., *ante,* at p. 766.) The cited statute—the only authority the majority provide for this

---

[1]Under the facts of this case, there can be no ambiguity about whether the policy excluded acts which, though technically forbidden or unathorized by law, resulted in mere accidental death or injury. In the first place, the only injuries the policy purported to cover at all were those arising from "accident[s]"; hence, the policy's *exclusions,* such as that for an insured's illegal act, would be superfluous unless applied to injuries which might be considered accidental. Moreover, the policy also contained express exclusions for injuries which were (1) "expected or intended" by an insured or (2) "the foreseeable result of an act or omission intended" by an insured, thus suggesting that an intentional act or injury was not a prerequisite to the distinct illegal act exclusion. Finally, application of the exclusion here does not arise simply because an act the law happens to forbid produced an accidental injury. As discussed above, the illegal act one commits when he points a firearm at a human being and deliberately pulls the trigger, causing the weapon to discharge and kill, is far beyond mere inadvertence or commonplace negligence.

proposition—states the unremarkable maxim that "[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." (Civ. Code, § 1653.) The majority fail to show how interpreting the illegal act exclusion to bar coverage for the felony of manslaughter, committed by the wilful and reckless misuse of a deadly weapon, would give the clause a meaning "wholly inconsistent" with the nature of the contract or the "main intention of the parties."

In another context, the majority insist that courts cannot insert in an insurance contract what the parties have omitted. (Maj. opn., *ante*, at pp. 764, 765.) But by *omitting* what was *expressly inserted and agreed upon*, the majority do equal damage to the parties' intent and expectations.

Accordingly, I cannot join the majority's strained effort to avoid applying the exclusionary clause to Kelly's commission of manslaughter. With respect to coverage for Kelly personally, I would affirm the Court of Appeal's determination that judgment should be entered for Safeco.

I reach a different conclusion, however, with respect to any liability of Kelly's *parents* for the fatal shooting. They committed no reckless homicide and were found guilty of no crime. The causes of action against them for Christopher's wrongful death relied solely on allegations of their negligent supervision, control, and maintenance of Kelly—in other words, the alleged breach of their duty of ordinary care.

As indicated above, the illegal act exclusion could not apply *directly* to the mere negligent acts or omissions of Kelly's parents. Such a broad interpretation of "illegal" would defeat the reasonable expectation that a policy promising to pay bodily injury damages "for which the insured is *legally liable*" (italics added) at least covers liability for an accidental injury arising from his or her ordinary negligence. Safeco does not suggest otherwise.

However, Safeco urges that the particular language of the exclusionary clause withdraws coverage from Kelly's parents for any claim based on *Kelly's* illegal act. As Safeco notes, the clause states that the policy's coverage is inapplicable to liability "arising out of any illegal act committed by or at the direction of *an* insured." (Italics added.) Safeco insists that the reference to "an" insured bars *all* policyholders from coverage for liability related to the illegal act of any of them.

It is true that in policies with multiple insureds, the cases have distinguished clauses that exclude coverage for particular facts applicable to "the" insured from those that exclude coverage for particular facts applicable to

"an" or "any" insured. Absent contrary evidence, the former language is considered singular and specific, so that one insured remains covered despite facts that exclude coverage for another, while the latter is considered plural and indefinite, so that if particular facts exclude coverage for one or more insureds, they exclude coverage for all. (E.g., *California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 194-195 [130 Cal.Rptr.520, 550 P.2d 1056] (*Warwick*); *Fire Ins. Exchange v. Altieri* (1991) 235 Cal.App.3d 1352, 1360-1361 [1 Cal.Rptr.2d 360] (*Altieri*).)

However, Safeco's policy also contained a paragraph entitled "Severability of Insurance." In language common to many insurance contracts, this paragraph stated that, subject to the policy's monetary limits, "[t]his insurance applies *separately to each insured.*" (Italics added.)

"Severability is a widely recognized doctrine that acknowledges the separate and distinct obligations the insurer undertakes to the various insureds, named and unnamed. [Citations.] The intent of a severability clause is to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. [Citation.]" (*American Nat. Fire Ins. Co. v. Fournelle Est.* (Minn. 1991) 472 N.W.2d 292, 294 (*Fournelle Est.*).)

Little California authority considers the effect of severability clauses on exclusionary provisions. However, a number of cases from other jurisdictions have concluded that if the policy contains language stating the severability of the insurer's obligation, exclusionary clauses apply separately to each insured, *even when language internal to the clauses themselves might suggest otherwise.* Thus, these cases reason, an exclusion must be considered solely from the standpoint of the *insured seeking coverage,* so that facts which would preclude coverage of a particular insured do not necessarily preclude coverage for the related liability of another.

In *Worcester Mut. Ins. Co. v. Marnell* (1986) 398 Mass. 240 [496 N.E.2d 158] (*Marnell*), parents' homeowners policy included their son as an insured. The policy excluded coverage for liability arising from the operation or ownership of a motor vehicle by "any" insured, but also contained a severability clause. (*Id.,* at p. 159.) After consuming alcohol at a party in the family residence, the son drove friends home in his car. En route, he struck and killed a pedestrian. The parents were sued, on a theory of negligent supervision, for allowing the son to drive while drunk. Citing the motor vehicle exclusion, the insurer declined the parents' tender of defense. In a coverage action, the trial court found that a defense was required.

The Supreme Judicial Court of Massachusetts affirmed. The court conceded that, absent a severability clause, the exclusionary reference to "any"

insured would bar coverage for the parents' liability arising from their coinsured son's ownership and operation of the car. (*Marnell, supra,* 496 N.E.2d 158, 160-161.) However, the court explained, a severability provision "requires that each insured be treated as having a separate insurance policy." (*Id.,* at p. 161.)

"Thus," the court observed, "the term 'insured' as used in the motor vehicle exclusion refers *only to the person claiming [liability] coverage under the policy.*" (*Marnell, supra,* 496 N.E.2d 158, 161, italics added.) Because the insured parents neither owned nor operated the accident vehicle, the court reasoned, the exclusionary clause could not bar their claim for coverage. (*Ibid.*; see also *Shamban v. Worcester Ins. Co.* (1999) 47 Mass.App. 10 [710 N.E.2d 627, 630] [in homeowners policy with severability clause, policy exclusion for operation of motor vehicle by "an" insured did not bar coverage of parents sued for negligent supervision of coinsured son, who caused injury while riding his dirt bike].)

Applying Utah law, the Tenth Circuit Court of Appeals recently took the same view of a motor vehicle exclusion in a policy containing severability language. In *West American Ins. Co. v. AV & S* (10th Cir. 1998) 145 F.3d 1224, a business liability policy covered several pizza franchisees and their employees. The policy excluded coverage for liability arising from ownership or operation of a motor vehicle by "any" insured. (*Id.,* at p. 1226.) In light of the policy's severability clause, the court concluded, the exclusion applied only to the particular franchisee whose coinsured employee caused an accident while delivering pizza in his own car. (*Id.,* at p. 1229.)

In *Fournelle Est., supra,* 472 N.W.2d 292, a homeowners policy named the husband and wife as insureds and defined, as additional insureds, relatives and dependent minors who were "residents of *your* household." (*Id.,* at p. 293, italics added.) The policy, which contained a severability clause, generally covered an insured's liability for bodily injury to another, but excluded such coverage for injury to "you" (i.e., a named insured) or "any" resident-of-household insured. (*Ibid.*) After moving from the family home pending a divorce, the husband returned for a visit, killed his children, and then committed suicide. The Minnesota Supreme Court held that despite the exclusionary clause, the policy covered the father's estate for the children's wrongful deaths.

The court reasoned as follows: "[S]everability demands that policy exclusions be construed only with reference to the particular insured seeking coverage. [Citations]." (*Fournelle Est., supra,* 472 N.W.2d 292, 294.) Hence, the issue was whether, with respect to the *husband individually,* the children

were additional insureds for whose deaths *he* was not covered. Because, at the time of their deaths, the children were no longer residents of *his* household, they were not additional insureds *as to him*. Accordingly, *he* and his estate were not denied coverage by virtue of the exclusionary clause. (*Ibid.*; see also *State Farm Fire & Cas. Ins. Co. v. Keegan* (5th Cir. 2000) 209 F.3d 767, 768-770 [under Texas law, where husband-wife homeowners policy with severability clause defined additional insured to include "member of your household" and excluded bodily injury coverage for "an" insured, husband, who had moved from marital household, was covered for negligent injury to child who remained with wife as household resident].)

In *Brumley v. Lee* (1998) 265 Kan. 810 [963 P.2d 1224], the Kansas Supreme Court concluded that because a severability provision gives each insured separate coverage, a homeowners policy clause which "ambiguous[ly]" excluded liability coverage for intentional acts by "any" insured did not bar coverage for an insured husband, sued on grounds he *negligently* failed to prevent his coinsured wife from inflicting an intentional, and fatal, blow upon a child. (*Id.*, at pp. 1227-1228; see also *Catholic Diocese of Dodge City v. Raymer* (1992) 251 Kan. 689 [840 P.2d 456, 459-462] [in homeowners policy with severability clause, exclusion for intentional conduct, or damage expected or intended, by "an" insured did not bar coverage of parents, sued for negligent supervision in connection with coinsured son's vandalism of school property].)

To like effect are *Northwestern Nat. Ins. Co. v. Nemetz* (1986) 135 Wis.2d 245 [400 N.W.2d 33] (*Nemetz*) and *Premier Ins. Co. v. Adams* (Fla.Dist.Ct.App. 1994) 632 So.2d 1054. In *Nemetz*, a liability policy excluded coverage for damage expected or intended by "an" insured. (*Nemetz, supra*, at p. 37, fn. 2.) The court reasoned that the meaning of "an" was ambiguous in light of the policy's severability clause, which specified that coverage applied separately to each insured. (*Id.*, at p. 37.) Resolving the ambiguity in favor of coverage, the court held that an insured wife was covered for a suit alleging her negligence in failing to prevent her coinsured husband from "torching" the couple's bar. (*Id.*, at pp. 37-38.)[2] *Adams* reached a similar result under a homeowners policy that excluded injury expected or intended by "any" insured, but also contained a severability provision. (*Adams, supra*, at pp. 1055-1056.) The court held that because a severability clause promises each insured separate coverage, parents were

---

[2]The *Nemetz* court agreed that public policy might bar coverage for wife if her tacit involvement in husband's arson plan rendered her less than "innocent." (*Nemetz, supra*, 400 N.W.2d 33, 38.) However, the court concluded that this issue had been waived on appeal by the insurers' failure to pursue it at trial. (*Id.*, at pp. 38-39.)

covered in a suit claiming that their negligent supervision allowed their child to commit an act of sexual abuse. (*Id.*, at pp. 1056-1057.)[3]

Only one California decision has addressed the effect of severability language upon an exclusionary clause. In *California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682 [56 Cal.Rptr.2d 434] (*California Casualty*), a husband and wife, insureds under multiple liability policies, stipulated to a judgment in favor of one Yessian, who had been injured in a collision with their jet boat. In related coverage actions, the insurers argued whether their policies covered the judgment. One policy excluded coverage for liability arising from the ownership or use of an inboard-powered watercraft " 'owned by any insured.' " (*Id.*, at p. 1690.) The scope of this exclusion became an issue on appeal in the coverage litigation.

After finding the boat itself came within the exclusionary clause, the Court of Appeal addressed Yessian's claim that the exclusion applied only to the insured *husband* and not to his coinsured wife. The theory asserted was that the stipulated judgment against the wife was based not on her personal

---

[3]See also *Transport Indem. Co. v. Wyatt* (Ala. 1982) 417 So.2d 568, 570-571, holding that in a policy with multiple insureds, and containing a severability provision, an exclusion for injuries to "any employee of any INSURED" (*id.*, at p. 569) applies only to an employee of the entity seeking coverage in the particular case. Other cases have reached a contrary conclusion, holding that a severability provision does not prevail over language in the exclusionary clause itself indicating that the exclusion is to apply collectively rather than individually. (E.g., *Allstate Ins. Co. v. Kim* (D.Hawaii 2000) 121 F.Supp.2d 1301, 1302-1303 [where policy with severability clause excluded coverage for injury intended or expected by "any" insured, parents were not covered for coinsured child's assault]; *Michael Carbone, Inc. v. General Acc. Ins. Co.* (E.D.Pa. 1996) 937 F.Supp. 413, 416-420 (applying New Jersey law) [despite severability clause, exclusion for motor vehicle operation by "any" rather than "the" insured is collective, not individual]; *Chacon v. American Family Mut. Ins. Co.* (Colo. 1990) 788 P.2d 748, 752 [exclusion for injury expected or intended by "any" insured is unambiguously collective, and thus applies to "innocent" coinsureds, even when policy contains severability clause]; *Johnson v. Allstate Ins. Co.* (Me. 1997) 687 A.2d 642, 644-645 [despite severability clause, exclusion for damage intentionally caused by "an insured person" barred coverage for wife sued as negligent for failure to prevent sexual abuse by coinsured husband]; *Gorzen v. Westfield Ins. Co.* (1994) 207 Mich.App. 575 [526 N.W.2d 43, 45] [despite severability clause, exclusion for liability arising from ownership or operation of vehicle by "an" insured bars coverage of parents for negligent supervision permitting auto accident by coinsured son]; *American Family v. Copeland-Williams* (Mo.Ct.App. 1997) 941 S.W.2d 625, 627-629 [use of exclusionary phrase "any insured" is unambiguous despite severability clause]; *Great Central Ins. Co. v. Roemmich* (S.D. 1980) 291 N.W.2d 772, 774-775 [exclusion for operation of motor vehicle by "any" insured is plainly collective despite severability clause]; *Mutual of Enumclaw Ins. Co. v. Cross* (2000) 103 Wash.App. 52 [10 P.3d 440, 442-446] [severability clause did not overcome clear coverage exclusion for injury expected or intended by "an" insured]; *Taryn E.F., by Grunewald v. Joshua M.C.* (1993) 178 Wis.2d 719 [505 N.W.2d 418, 420] [severability language did not prevail over clause excluding coverage for malicious acts of "any" insured; distinguishing *Nemetz, supra,* 400 N.W.2d 33, 37, where exclusion was for damage or injury expected or intended by "an" insured].)

ownership or operation of the boat, but solely on community property laws making her vicariously liable for her husband's torts.

At the outset, the Court of Appeal saw no indication that the wife's liability was vicarious only. As the court noted, the tort complaints against the couple alleged their joint ownership, possession, control, and operation of the jet boat at the time of the accident. (*California Casualty, supra,* 48 Cal.App.4th 1682, 1695.)

In any event, the court held, the wife was not covered even if the judgment against her was based solely on her community property interest. The court applied the California rule that when an exclusion bars coverage for defined conduct by "an" insured, the exclusion extends to the related liability of any other insureds, even if that liability is merely derivative or vicarious. (*California Casualty, supra,* 48 Cal.App.4th 1682, 1696; see text discussion, *ante.*)

Nor, the court concluded, did the policy's severability language alter this result. Acknowledging the split among other jurisdictions, the court found "more persuasive" the cases concluding that "a clause excluding [coverage] for specific conduct should prevail over a more general severability provision." (*California Casualty, supra,* 48 Cal.App.4th 1682, 1697.) "Indeed," the court observed, "acceptance of Yessian's position would effectively nullify exclusions from coverage in any case involving married coinsureds and a policy with a severability provision. . . . It is inconceivable that parties to a policy would include clauses specifically excluding coverage for claims based on certain types of conduct, but intend those exclusions to have no effect in any case involving claims against coinsured spouses." (*Id.,* at pp. 1697-1698.)

The severability discussion in *California Casualty* is arguably dictum, since the Court of Appeal appeared to believe the exclusion applied directly to the wife by virtue of her personal conduct. Moreover, it is unclear the extent to which the court's narrow construction of the severability provision stemmed from its particular concern that exclusionary clauses might be nullified in actions against the community for the torts of a single spouse.

Such concerns are not present here. Any liability of Kelly's parents for Christopher's death is not merely vicarious or derivative. Instead, their liability is premised on the *independent* theory that they negligently failed to supervise and control Kelly's access to the firearm with which Christopher was shot.

Under the instant circumstances at least, I am persuaded by the cases concluding that when a multiparty liability insurance policy contains a

severability provision, the effect is to extend both the policy's coverage, and its exclusions, *individually* to *each* insured, as if he or she were the *only* insured, subject to policy limits. Under this rule, exclusions from coverage are *personal* and may not be imputed from one insured to another, even where, as here, language internal to an exclusionary clause, viewed in isolation, could be read to withdraw coverage from all insureds for the excludable conduct of one.

These conclusions follow from established California principles governing the construction of insurance contracts. Insurance policies, like all contracts, apply according to their plain terms but must be interpreted when ambiguous. Whether policy language is clear or ambiguous is determined in context, not by viewing words or phrases in isolation. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If a provision has more than one reasonable meaning, the ambiguity is resolved in favor of coverage a lay policyholder would reasonably expect. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253] (*AIU*).) A corollary of this rule is that exclusions from coverage are narrowly construed to afford the coverage reasonably anticipated. (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704].)

Here, even if the illegal act exclusion's reference to "an" insured might be deemed collective when viewed alone (e.g., *Warwick, supra,* 17 Cal.3d 190, 194-195; *Altieri, supra,* 235 Cal.App.3d 1352, 1360-1361), the policy's severability clause contradicted any such inference by stating that "[t]his insurance applies *separately* to each insured." (Italics added.) Safeco identifies no meaning for this provision other than the one apparent from its words, i.e., that each of multiple insureds under the policy was to be treated, within policy limits, as though the policy applied *only* to him or her. This promise of severable interests would be rendered meaningless if the single word "an" in the exclusionary clause were nonetheless found to prevail, and to make the exclusion collective. (Cf. *AIU, supra,* 51 Cal.3d 807, 827.)

Nor would such a construction satisfy the reasonable expectations of the insureds. It is unlikely Kelly's parents understood that by *extending* their homeowners' coverage to include Kelly as an additional insured, they were actually *narrowing their own coverage* for claims arising from his torts. In light of the severability provision, Safeco's intent to achieve that result was not clearly expressed, and the ambiguity must be resolved in the insureds' favor.

Applying these principles to the facts of the instant case, I conclude that the illegal act exclusion in Safeco's policy does *not* withdraw coverage from

Kelly's parents for liability arising from their alleged negligence in allowing Kelly to shoot Christopher. As to Kelly's parents, I would therefore reverse the judgment of the Court of Appeal, and would instruct that court to remand with directions to enter summary judgment for the insureds.

Brown, J., concurred.