Filed 1/25/16  Castle v. Hui CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL CASTLE et al., | H034601 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. CV031847) |
| v. | |
| ALAN HUI, | |
| Defendant and Appellant. | |

Following a court trial, judgment was entered in favor of Michael Castle, Nancy Buchanan, James Castle and Castle Vegtech, Inc. (hereafter collectively "respondents") and against Alan Hui on respondents' claims they were entitled to indemnity from Hui in connection with the remediation of soil and groundwater contamination on certain real property (the Property).  Hui purchased the Property from respondents in 2000 and, in connection with that purchase, executed a written agreement (the Indemnity Agreement) promising to indemnify them against any claims relating to the contamination.

As he did below, Hui argues the Indemnity Agreement is unenforceable pursuant to Civil Code section 1668[1] because it seeks to exempt respondents from their violations of the law or under section 2774 because the pollution at issue was the result of respondents' felonious acts.  Hui further argues the trial court erred in the following ways:  (1) by entering judgment in favor of Castle Vegtech, Inc.; (2) by failing to rule on the claims for equitable indemnity raised in the pleadings; and (3) by failing to find that

[1] Unspecified statutory references are to the Civil Code.

Hui was the prevailing party on James Castle's cross-complaint and Castle Vegtech, Inc.'s complaint.

We find no merit to any of Hui's claims and will affirm the judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Pleadings and pretrial proceedings*

Respondents sued Hui, and various other defendants alleging three causes of action:  (1) breach of an express indemnity agreement, (2) implied total indemnity and (3) implied partial indemnity.  Hui cross-complained against respondents, as well as Thomas Castle, Jean Castle, Jamina Investments, and A.L. Castle, Inc., listing the following relevant causes of action:  (1) indemnification; (2) apportionment of fault; and (3) declaratory relief.[2]  James Castle then filed a cross-complaint against Hui, alleging causes of action for breach of indemnity agreement, implied indemnity, implied partial indemnity and equitable relief.

Hui moved for summary judgment or summary adjudication against respondents arguing, among other things:  (1) there was no express indemnity agreement between Hui and Castle Vegtech, Inc.; (2) there was no right of implied indemnity between Hui and Castle Vegtech, Inc.; and (3) the alleged indemnity agreement is void as it violates section 2774.

Castle Vegtech, Inc. did not oppose Hui's motion for summary adjudication on the issue of express indemnity because it did not intend to assert a cause of action for breach of an express indemnity agreement against Hui.

Following a hearing, the trial court (Hon. James C. Emerson) granted Hui's motion for summary adjudication of the cause of action for breach of the written indemnity agreement as to Castle Vegtech, Inc. on the ground that it was not a party to

---

[2] The remaining causes of action are not relevant as they were asserted against parties who are not part of the instant appeal.

that agreement. With regard to Hui's contention that the indemnity agreement was void under section 2774, the trial court found that Hui had failed to meet his initial burden of proof on this claim and that, "[e]ven if the court accepts the findings of the [Water Board] that Castle Vegtech and Jamina Investments were responsible parties for the condition of pollution on the subject property, there is a triable issue of material fact as to whether the discharge or permission of discharge of pesticides to the soil and water of the subject property violated Penal Code sections 374.2 and 374.8, particularly with regard to whether the discharge was malicious and/or knowing." The trial court also denied Hui's motion for summary adjudication on the claims for equitable indemnity.

The matter proceeded to a court trial (Hon. Joseph H. Huber).

### B. Trial

From 1958 until 1986, A.L. Castle, Inc. operated a "pesticide formulation, sales and application business" at 190 Mast Street (the Property)[3] in Morgan Hill, California. The business was sold to Arco Sun Seeds sometime in 1985, at which time A.L. Castle, Inc. also sold the real property to Jamina. Jamina, a partnership made up of the Castle children, Michael Castle, James Castle and Nancy Baldwin, leased out the office space and buildings on the property to several different tenants, one of which was Arco Sun Seeds. According to Michael Castle, none of the businesses operating on the property after 1985 were involved in either fertilizer or pesticides.

Michael Castle testified he was first notified the Property was a source of groundwater contamination in 1991 when he began receiving letters to that effect from the California Regional Water Quality Control Board (Water Board). In 1992, the Water

---

[3] An alternative address for the property used throughout the proceedings below was 16495 Vineyard Road. The property itself was also owned by A.L. Castle, Inc.

3

Board issued a cleanup and abatement order (Order 92-104)[4] regarding the Property. Jamina retained a consultant and undertook remediation of the soil and groundwater contamination on the Property. Michael testified that, in all, Jamina spent approximately $1 million towards that end.

In 2000, Jamina listed the Property for sale as it was unable to afford the property taxes. Michael thought the initial listing price was somewhere in the range of $800,000 to $850,000, which was a "deep discount taking into consideration the cost to remediate the soil and groundwater."[5] Hui made an offer on the Property and, after exchanging counteroffers, the parties agreed to a price of $700,000.

The sales contract, which was admitted into evidence, expressly provides that the property is being purchased "as-is." Paragraph 11 of the agreement provides a general disclosure as to environmental hazards. Counteroffer No. 1, which Hui accepted, contains another as-is reference, along with a specific acknowledgement that Hui has been informed of the nature and extent of the property, soil and groundwater contamination. The counteroffer further provides: "3. Buyer agrees to follow the various State of California 'Clean Up and Abatement Orders' on the property. Buyer will execute and [*sic*] Indemnification Agreement, holding Jamina Investments, James and Michael Castle and Nancy Buchanan harmless from future claim [*sic*] for damages regarding the property."

On February 23, 2001, Hui executed a document entitled "As-Is, General Release and Indemnity Agreement" (Indemnity Agreement). The Indemnity Agreement reconfirms: (1) the Property is being sold as-is; (2) Hui has been informed of the soil and

_____

[4] Order 92-104 was introduced into evidence at the trial and the trial court took judicial notice of the document for the limited purposes of showing that it existed and was received, but not for the truth of its contents.

[5] Michael testified that, in his opinion, the Property was worth approximately $2 million more than what Hui paid for it.

4

groundwater contamination as well as the existing clean-up and abatement orders, and (3) Hui has been encouraged to review the Water Board files and all information pertaining to the environmental condition of the Property.

The Indemnity Agreement further provides: "Buyer, on behalf on himself, his heirs, executors, administrators, successors and assigns hereby agrees to indemnify, defend, protect and hold harmless Seller, Seller's partners, agents, and anyone acting on Seller's behalf harmless from and against any all [*sic*] claims, actions, causes of action, demands, liabilities, damages, costs and expenses (including attorneys' fees), whether direct or indirect, known or unknown, foreseeable or unforeseeable, which may be asserted against or suffered by Seller, Seller's partners, agents, or anyone acting on their behalf, at any time after the close of escrow on account of or in any way arising out of or connected with the Property, including without limitation, any of the matters enumerated above."

Michael Castle testified that the as-is provisions were important to the sellers because they knew the Property was contaminated, and the provision requiring Hui to follow the various clean-up and abatement orders and execute an indemnification agreement in favor of the sellers was also important to make sure Hui was fully aware of what he was purchasing. Hui never objected to any of these conditions in the purchase agreement or the Indemnity Agreement. Michael testified the sellers provided Hui with all of the soil and groundwater contamination studies as well as the cleanup and abatement orders.

On September 15, 2004, the Water Board wrote to Castle Vegtech, Inc., Jamina, Nancy Buchanan, James Castle and Michael Castle and others stating that "corrective actions have not been performed [on the Property] during the past two or more years."

5

The Water Board acknowledged the Property had been sold to Hui in 2001,[6] and noted that Hui "and later, Mr. Mangano, performed some site investigation and cleanup" but "Mangano has disappeared." Accordingly, Jamina and the other parties were again responsible for remediating the contamination.

Jamina wrote to Hui, enclosing a copy of the September 15 letter from the Water Board, demanding that he comply with his obligations under the indemnity agreement. Michael testified that Hui did not "take any responsibility for any of the costs or any of the remediation work on the Property."

Jamina retained an environmental solutions expert, David Houghton, to evaluate the Property in 2004. Houghton found that the 33 monitoring wells previously installed on the Property had been buried and/or broken, other work that had been done previously to remediate the Property had been damaged or destroyed, and that Mangano had been working on the site "without regulatory approval, . . . basically illegal [*sic*]." Houghton further testified that, at the time the original contamination took place many years ago, businesses did not consider the long-term consequences of their operating practices, such as washing out tanker trucks before filling them with a different chemical, and in his opinion, the contamination of the Property was not intentional.

Hui was present at trial but did not testify, although portions of his deposition were read into evidence as part of respondents' case-in-chief.[7] In his deposition testimony, Hui said he obtained a masters degree in electrical engineering from UC Berkeley in 1972. He also acknowledged that he knew the Property was contaminated but believed he could make a profit by cleaning up the Property and reselling it. Hui understood he was taking responsibility for cleaning up the Property and that the sellers

---

[6] The September 15, 2004 letter also noted that Hui subsequently transferred title to the Property to Michael Mangano. Mangano is not a party to this appeal.

[7] Hui's counsel cross-examined witnesses presented by the respondents and called James Castle and Jean Castle to testify pursuant to Evidence Code section 776.

expected him to do so. In this regard, he relied on Mangano who had told him "he will take care of it."

Following the trial, the parties exchanged posttrial briefs, but no one requested a statement of decision. On May 7, 2009, the trial court issued its decision, finding the Indemnity Agreement was valid and enforceable, and applied to both liability and actual loss. Further, the trial court determined Hui had failed to prove his claim for indemnity on his cross-complaint. Judgment was entered against Hui on the complaint and on his cross-complaint. Hui's subsequent motion for a new trial was denied.

## II.    DISCUSSION

### A.    *Section 1668*

Hui argues the Indemnity Agreement is unenforceable under section 1668. We disagree.

It is well settled that section 1668 applies only to "contractual exemptions from liability, not to indemnity contracts." (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 767.) "The distinction between an exemption (§ 1668) whereby a person seeks to avoid liability to a victim who has suffered due to that same person's unlawful conduct and an indemnity has been recognized by the courts. [Citations.] A public policy consideration exists. An exemption may deprive a victim of compensation for injuries but an agreement to indemnify a person who may be responsible for a loss is additional assurance that the loss will be compensated." (*Lemat Corp. v. American Basketball Assn.* (1975) 51 Cal.App.3d 267, 278.) "If section 1668 applied to agreements to indemnify persons against unlawful acts then *all* agreements to indemnify against violations of the law would be illegal. The distinctions made in section 2773 and section 2774 between unlawful acts 'thereafter to be done' and an unlawful act already done would be given no effect. Statutes are to be construed as a whole and, when reasonably possible, full force and effect given to all of their provisions." (*Id*. at pp. 277-278.)

7

Accordingly, although the trial court did not expressly rule on the question in its decision, it is clear that section 1668 does not render the Indemnity Agreement unenforceable.

### B. Section 2774

Hui next contends the Indemnity Agreement is unenforceable by operation of section 2774. Hui's argument hinges on his assertion that Order 92-104 conclusively established that respondents' contamination of the soil and groundwater on the Property was a felony. Order 92-104 was admitted into evidence at trial, and according to Hui, respondents may not contest its findings that they "discharged pesticides and other chemicals to soil and waters of the state near [the Property] . . . [which] . . . has resulted in chemical concentrations in the ground water which exceed water quality objectives." In his brief, Hui contends respondents' actions violated Penal Code sections 374.2 and 374.8. Because respondents were therefore, in his view, guilty of one or more felonies, the Indemnity Agreement falls afoul of section 2774 which invalidates agreements purporting to indemnify one against a felonious act. For the reasons set forth below, we disagree.

The first statute which Hui contends respondents violated, Penal Code section 374.2, is not applicable to the pollution which took place on the Property. That statute prohibits the malicious discharging of "any substance capable of causing substantial damage or harm" *into the sanitary sewer system*. (*Id*., subd. (a).) There was no evidence presented at trial that anyone discharged any hazardous materials into the sewer system. Order 92-104 makes no mention of any discharge into a sewer, and Hui does not refer us to any other evidence in the record which shows any such activity. Accordingly, Penal Code section 374.2 cannot serve as the basis for invalidating the Indemnity Agreement.

The second statute Hui cites, Penal Code section 374.8, makes it unlawful to knowingly deposit hazardous substances upon any road, railroad right-of-way, or upon

8

the land of another, or waters of this state. Violation of the statute is "punishable by imprisonment in the county jail for not more than one year or by imprisonment . . . for a term of 16 months, two years, or three years, or by a fine . . . or by both the fine and imprisonment." (Pen. Code, § 374.8, subd. (b).) This offense is therefore a "wobbler," chargeable or punishable as *either* a misdemeanor or a felony. (*People v. Park* (2013) 56 Cal.4th 782, 789.) The question of whether a wobbler offense conviction is classified as a felony or misdemeanor is determined by the sentence actually imposed. (*People v. Terry* (1996) 47 Cal.App.4th 329, 331-332.)

Consequently, even if the trial court had taken judicial notice of the Water Board's findings in Order 92-104 that respondents "discharged pesticides and other chemicals to soil and waters of the state near [the Property]" and those findings conclusively established that respondents violated Penal Code section 374.8, that violation would not necessarily be a felony. Hui presented no evidence to show that respondents were subjected to criminal proceedings in connection with the pollution of the Property, let alone that they were convicted or sentenced to a felony term of imprisonment for violating Penal Code section 374.8. It therefore makes no difference whether or not the trial court should have taken judicial notice of Order 92-104's findings, because even if it had, those findings would not suffice to establish that respondents' conduct was felonious and thus that the Indemnity Agreement was void under section 2774.

C.     *Judgment in favor of Castle Vegtech*, *Inc.*

Hui complains that the trial court erred by entering judgment in favor of Castle Vegtech, Inc. because Judge Emerson had previously "entered summary judgment" in his favor against Castle Vegtech, Inc. He further argues that he is thus the prevailing party with respect to that party and is entitled to an award of costs.

What Hui fails to recognize, however, is that his motion for summary *judgment* against Castle Vegtech, Inc. was denied. Rather, he obtained summary adjudication of one cause of action, namely the cause of action for express indemnity, against Castle

9

Vegtech, Inc. The trial court denied his motion for summary adjudication against Castle Vegtech, Inc. on its causes of action for implied indemnity and implied partial indemnity. Accordingly, the trial court was not precluded from entering judgment in favor of Castle Vegtech, Inc. after considering the evidence presented at trial.

### D. *Judgment in favor of respondents on Hui's cross-complaint*

Hui also argues the trial court erred in entering judgment in favor of respondents on his cross-complaint for equitable indemnity. In its decision, the trial court stated simply, "Hui has failed to prove his claim for indemnity on the Cross-Complaint and judgment is to be entered for Cross-Defendants." According to Hui, he is entitled to indemnity from respondents because they had equal or greater culpability for the pollution on the Property.

An appellate court applies the substantial evidence rule when the appeal challenges the trier of fact's resolution of disputed factual questions. In that situation, the appellate court must review the record, and draw any reasonable inferences therefrom, in the light most favorable to the judgment and uphold the judgment where the record contains substantial evidence to support it. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.) Since Hui is seeking to overturn the trial court's resolution of the dispute over his entitlement to indemnity from respondents, we look to whether substantial evidence in the record supports the trial court's decision.

Based on the record, there was substantial evidence before the trial court buttressing its conclusion that Hui's claim for equitable indemnity was without merit. Hui admitted in his deposition that he purchased the Property at a discount, with full knowledge that it was contaminated, because his plan was to remediate the Property with Mangano's help and resell it for a profit. At the time he purchased the Property, Hui executed the Indemnity Agreement in which he expressly agreed to hold the sellers harmless for the Property's remediation. After Mangano, or someone else, destroyed the remediation work in progress, the Property was abandoned and Hui refused to honor the

10

terms of the Indemnity Agreement. In the face of this evidence, Hui presented nothing to support his claim that respondents are obligated, equitably or otherwise, to indemnify him for the costs of remediation. Accordingly, we find the trial court properly entered judgment in favor of respondents and against Hui on his claims for equitable indemnity.

### E. Judgment in favor of James Castle

Hui next argues he should be found to have prevailed on the cross-complaint brought against him by James Castle because the trial court's decision did not award him anything on that pleading.

Hui cites no authority for this contention which is raised in a most cursory fashion. An appellant must support each contention with argument and citation to authority that demonstrates prejudice resulting from the error. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) "Where any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there." (*Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77.)

James Castle's cross-complaint was essentially identical to the complaint brought by Michael Castle, Nancy Buchanan and Castle Vegtech, Inc., and also sought to enforce the Indemnity Agreement against Hui. While it is true the court's ruling does not specifically mention James Castle or the cross-complaint he filed, it can be readily inferred that he was a prevailing party below since the trial court's decision upheld the validity of the Indemnity Agreement and denied Hui's cross-complaint for equitable indemnity against respondents.

## III. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

11

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.