Filed 4/20/16  Plaza La Reina v. Gin Wong Associates CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PLAZA LA REINA, L.P., | B260577 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC119593) |
| v. | |
| GIN WONG ASSOCIATES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Miller Barondess and James Goldman for Plaintiff and Appellant.

Morris Polich & Purdy, Theodore D. Levin, Christopher J. Menjou, Jens B. Koepke and Richard H. Nakamura, Jr., for Defendants and Respondents.

This appeal involves the interpretation of a joint defense agreement (the Agreement) between plaintiff Plaza La Reina, L.P. (PLR), the owner/developer of a hotel/retail project in Los Angeles (the Project), and defendants Gin Wong Associates and Millard A. Lee (collectively, GWA), the architect for the Project. The Agreement, in which GWA agreed to assist PLR in litigation between PLR, the general contractor for the Project, and several subcontractors (the Hopkins litigation), included a provision requiring PLR to execute a release of any claims it might have against GWA "[a]t the final conclusion of this Litigation [i.e., the Hopkins litigation] and/or Arbitration, whichever is later, whether by verdict and award, dismissal, summary judgment, appellate ruling (or, as applicable, expiration of time to appeal), or any other final proceeding or process, and after final payment, if applicable, of any sums deemed due and owing from GWA to PLR pursuant to any judgment or arbitrator award."

The Hopkins litigation ultimately was settled and dismissed, after which PLR filed the instant lawsuit against GWA for breach of contract, professional negligence, and equitable indemnity. GWA moved for summary judgment based upon the release provision of the Agreement, and the trial court granted the motion. PLR appeals, asserting that (1) the release provision did not require PLR to release GWA in the event the Hopkins litigation settled; (2) even if the release provision applied in the event of a settlement, PLR was required to release GWA only if there was an arbitration or adjudication to determine GWA's liability to PLR, and only after GWA paid the amount owed to PLR; and (3) in any event, PLR timely withdrew from the Agreement, which terminated any duty to release GWA. We conclude the language of the Agreement is not reasonably susceptible to PLR's interpretation and that PLR's purported withdrawal from the Agreement was not timely. Accordingly, we affirm the judgment.

2

# BACKGROUND

A.  *The Hopkins Litigation*

PLR hired GWA as the architect for the Project in August 2005. Construction began in 2008. George C. Hopkins Construction Co., Inc. (Hopkins) was the general contractor. Several issues arose during the first phase of construction, and in November 2009, Hopkins filed a lawsuit against PLR alleging breach of contract and other claims, and seeking more than $3 million in damages. Among other things, Hopkins alleged that the architectural plans were not complete, accurate, suitable for construction, properly coordinated, or in conformance with applicable codes. PLR filed a cross-complaint against Hopkins and several subcontractors in March 2010, alleging claims for breach of contract, breach of fiduciary duty, contractual indemnity, and negligence, and seeking more than $2 million in damages. In defense of PLR's cross-complaint, Hopkins and the subcontractors filed cross-complaints against PLR to foreclose mechanics lien claims and alleged that PLR's claims were caused by GWA's professional negligence.

Before PLR filed its cross-complaint, PLR's principal sent a letter to GWA, informing GWA of the Hopkins litigation and of Hopkins' assertion that its failure to perform work and/or its defective work were due to errors and omissions by GWA. PLR's principal requested that GWA forward the letter to its errors and omissions insurance carrier to place it on notice of a potential claim. A month later (a few days before PLR filed its cross-complaint), PLR's attorney sent a letter to GWA to inform GWA that PLR had no desire to sue it for indemnity at that time, and would refrain from doing so if GWA's insurance carrier confirmed that GWA tendered PLR's claim and if GWA entered into a tolling agreement. Shortly thereafter, counsel received an e-mail from GWA's professional liability carrier, confirming that the potential claim was tendered, and stating that GWA was "very

3

interested in maintaining positive relations" with PLR and was willing to enter into a tolling agreement.

PLR and GWA entered into the tolling agreement in May 2010. They agreed to toll the running of all periods of limitation, repose and laches applicable to "any claim that PLR may have against GWA relating to or arising out of" the claims alleged in the Hopkins litigation (and any claim GWA may have against PLR), from the date of the tolling agreement "until the [Hopkins litigation] is resolved by settlement or final judgment, or January 1, 2012, whichever occurs sooner."

### 1. The Joint Defense Agreement

In January 2011, PLR and GWA, and their attorneys, began discussions about entering into a joint defense agreement related to the Hopkins litigation. The parties agreed that it was in their best interests to resolve the issues between them outside of the Hopkins litigation and to present a united front against the claims asserted by Hopkins and the subcontractors. The parties and their attorneys negotiated the terms of the Agreement for more than six months; it was not signed by the parties until late August 2011. The Agreement included the following provisions:

a. *Paragraph 3.1* ("Common Interest in Defense and Applicability of Joint Defense Doctrine"): GWA and PLR agreed that the Hopkins litigation presented legal and factual issues in which GWA and PLR had a mutuality of interest, and their interests would be best served by sharing confidential and other information and jointly engaging the services of professional consultants. In furtherance of the Agreement, PLR agreed to associate GWA's law firm, Morris Polich & Purdy (MPP) as co-counsel in the Hopkins litigation to defend PLR on issues relating to allegations of GWA's

professional negligence.  GWA also agreed to retain an architect consultant, who would be designated as PLR's expert with respect to those issues. GWA agreed to be responsible for all attorney fees and costs incurred by MPP, and for the fees and costs incurred by the architect consultant.  Finally, GWA agreed to have a representative of its professional liability carrier present or available by telephone at all mediations and settlement conferences.

b. *Paragraph 3.2* ("Tolling Agreement"):  The parties agreed to extend the May 2010 tolling agreement to January 1, 2013, or six months after either party's withdrawal from the Agreement, whichever was later.

c. *Paragraph 3.9* ("Conflict Waiver"):  The parties waived the actual conflict of interest arising from MPP's representation of both GWA and PLR, as well as any other potential conflicts of interest.  The parties agreed that either party could withdraw from the Agreement with 30 days written notice to counsel for the other party, after which the terms of the Agreement would no longer be in effect, and the tolling agreement would be in full force and effect as set forth in paragraph 3.2.

d. *Paragraph 3.11* ("Post Litigation Dispute Resolution"):  The parties agreed that in the event of a trial of the Hopkins litigation, they would use their best efforts to submit a special verdict form that would allow the trier of fact to apportion the percentage of liability, if any, among PLR, GWA, and any other party.  The parties also agreed that either party may demand binding arbitration, under certain specified circumstances, within 30 days of the final conclusion of the Hopkins litigation.

e. *Paragraph 3.13* ("Release Following Final Conclusion of Litigation and/or Arbitration, Whichever is Later"):  The parties agreed that "[a]t the final conclusion of this Litigation [i.e., the Hopkins litigation] and/or

5

Arbitration, whichever is later, whether by verdict and award, dismissal, summary judgment, appellate ruling (or, as applicable, expiration of time to appeal), or any other final proceeding or process, and after final payment, if applicable, of any sums deemed due and owing from GWA to PLR pursuant to any judgment or arbitrator award, then, within thirty (30) days thereafter PLR agrees to execute a release" that releases GWA from any and all claims, known or unknown. If the parties could not or did not agree upon the language of the release within 30 days, or a time period otherwise agreed upon, the parties agreed that the Agreement would operate as a release of GWA by PLR of all claims arising from the Hopkins litigation.

f. *Paragraph 3.25* ("Dispute Resolution, Mediation Condition Precedent"): The parties agreed that, "[w]ith the exceptions of the arbitrations called for in paragraph 3.11, any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party."

g. *Paragraph 3.26* ("Dispute Resolution, Arbitration"): The parties agreed that, "[w]ith the exceptions of the arbitrations called for in paragraph 3.11, any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to final and binding arbitration" if the parties do not resolve the dispute in mediation.

In accordance with the Agreement, GWA's counsel, MPP, was associated as PLR's co-counsel in the Hopkins litigation and assisted in PLR's defense. MPP attended and defended depositions, propounded and responded to discovery, participated in document review and production, consulted with experts, and

6

attended court hearings.  GWA and MPP also participated in several mediation sessions in October 2011 through early 2012.

      2.      <u>Settlement and Dismissal of the Hopkins Litigation</u>

In January 2012, most of the parties to the Hopkins litigation reached a global settlement.[1]  GWA was not a party to the settlement.  Hopkins and PLR each filed motions for a good faith settlement determination.  PLR explained in its motion that it had possible claims for indemnity against GWA, and had served the motion on GWA to give notice that PLR was seeking a good faith settlement determination as to claims for which PLR may seek to recover damages from GWA.  The motions were granted.

On or about April 10, 2012, PLR and one of the subcontractor parties, D. Kent Electric, Inc. (Kent) filed a status report and request for dismissal in the Hopkins litigation.  PLR and Kent stated that "[w]ith the exception of D. Kent Electric, Inc. ('Kent') the settlements made in this case and approved by the court have been concluded.  All payments to be made have been made and all dismissals have been filed."  They explained that under the terms of the settlement agreement between PLR and Kent, Kent agreed to perform some additional work, in three phases, and PLR agreed to pay certain sums after each phase.  They noted, however, that some of the work that Kent agreed to perform would not be completed for some time.  Therefore, they "agreed in the settlement agreement that even though this case may be dismissed, the Court retains jurisdiction pursuant to [Code Civ. Proc., §] 664.6 over any dispute related to the settlement agreement." They noted that they would "file dismissals of the action as to Kent and Plaza La

---

[1]    A separate lawsuit, brought by the concrete subcontractor to enforce its mechanic's lien, was consolidated with the Hopkins litigation and was not part of the global settlement; it was settled a month after the global settlement.

7

Reina and record appropriate releases of the mechanic's lien and notice of pending action recorded by Kent." In conclusion, they stated: "It is therefore requested that the Court dismiss this action and all related and consolidated cross actions and retain jurisdiction over any dispute related to, or enforcement of, the previously approved settlement agreement between Kent and Plaza La Reina."

On April 17, 2012, the trial court in the Hopkins litigation entered a minute order stating: "Court orders case dismissed and court to retain jurisdiction pursuant to Code of Civil Procedure section 664.6."

In May 2012, counsel for PLR contacted GWA's counsel to request contribution from GWA for claims raised in the Hopkins litigation against PLR. GWA did not respond. On May 10, 2012, PLR's counsel gave 30-day notice to GWA's counsel, by e-mail and by United States mail, that PLR was withdrawing from the Agreement. Later that same day, GWA's counsel e-mailed to PLR's counsel a proposed release in accordance with paragraph 3.13 of the Agreement. Thirty-three days later, on June 12, 2012, PLR and Hopkins filed requests for dismissal of their cross-complaints against Kent in the Hopkins litigation; the court clerk entered the dismissals that same day.

B.     *The Present Case*

The present case began in December 2012, when PLR filed a complaint against GWA alleging claims for breach of contract, negligence, and equitable indemnity based upon GWA's work on the Project. GWA moved for summary judgment on the ground that PLR had released all claims against GWA, citing paragraph 3.13 of the Agreement. GWA supported its motion with, among other things, documents from the Hopkins litigation, including documents regarding the settlement of the litigation and the joint request by PLR and Kent to dismiss the entire case.

8

PLR opposed the motion, arguing that extrinsic evidence showed (or presented a disputed issue of fact) that the parties intended that GWA would not be entitled to a release until there was a determination (by verdict after trial or arbitration) allocating fault as between PLR and GWA, and a payment by GWA to PLR. In addition, PLR argued that it terminated the Agreement before the conclusion of the Hopkins litigation, and thus the release provision did not come into effect. In support of its opposition, PLR submitted, among other evidence, declarations from its attorney in the Hopkins litigation, Lawrence Teplin, and PLR's principal, Kambiz Hekmat, that discussed the negotiations over the Agreement, their beliefs as to the purpose and structure of the Agreement, and the expectations of the parties to the Agreement.

In reply, GWA argued that PLR's interpretation of the Agreement was not reasonable in light of the language of the Agreement, and therefore Teplin's and Hekmat's declarations regarding their understanding of how the Agreement would operate were inadmissible. It noted that PLR admitted that under the Agreement, neither party could demand arbitration to determine any allocation because the Hopkins litigation did not go to trial. Thus, GWA argued, PLR's argument that arbitration and payment were conditions precedent to the release made no sense. Finally, GWA argued that PLR's obligation to release all of its claims against GWA arose on April 17, 2012, when the Hopkins litigation was dismissed, and PLR's attempt to terminate the Agreement before executing a release constituted an anticipatory breach that should not be condoned by the court.

The trial court granted GWA's motion, and sustained GWA's objections to PLR's evidence related to PLR's alleged beliefs regarding the purpose and structure of the Agreement. The court found that the dismissal of the Hopkins litigation triggered the Agreement's release provision, and therefore PLR's claims were barred by a release of claims. The court also found that PLR's withdrawal

9

from the Agreement was not timely and therefore was ineffective to nullify the release.

GWA submitted a proposed judgment to the trial court based upon the language in the court's minute order. PLR objected to the proposed judgment, arguing that it failed to specify the evidence PLR proffered in opposition to the summary judgment motion; PLR proposed lists of evidence to be included in the final judgment. Over GWA's objection, the trial court included PLR's proposed lists of evidence in the final judgment, and preceded each list by stating: "In opposition, [PLR] has proffered the following evidence." Much of the evidence listed, however, was found by the court to be inadmissible, because the court sustained GWA's objections to those portions of Teplin's and Hekmat's declarations.[2]

Judgment was entered on October 8, 2014, from which PLR timely filed a notice of appeal.

## DISCUSSION

PLR contends the trial court erroneously construed the Agreement when it found that the Agreement's release provision was triggered by the settlement of the Hopkins litigation, that the release provision applied even if there was no allocation of liability and payment by GWA to PLR, and that PLR's withdrawal from the Agreement was not timely. We find no error in the trial court's construction.

---

[2]    In light of the trial court's ruling that this evidence was inadmissible, PLR's statements in its appellate briefs that the court "acknowledged" that evidence is disingenuous. The court, at PLR's request, simply listed the evidence that PLR *proffered*, regardless whether it was admitted.

10

A.    *Standards for Interpreting Contracts and Standard of Review*

As PLR correctly observes, the overarching goal in interpreting contracts is to determine and give effect to the mutual intention of the parties at the time of contracting. (Civ. Code, § 1636; *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763.) "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. (Civ. Code, § 1639.) 'The words of a contract are to be understood in their ordinary and popular sense.' [Citations.] [¶] Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. [Citations.] If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract. [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Newport Beach*).)

"The threshold issue of whether to admit the extrinsic evidence -- that is, whether the contract is reasonably susceptible to the interpretation urged -- is a question of law subject to de novo review. [Citations.]" (*Newport Beach*, *supra*, 109 Cal.App.4th at p. 955; see also *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) The trial court's ultimate interpretation of the contract also is subject to de novo review if no extrinsic evidence is admitted or if the evidence is not in conflict. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) But if the extrinsic evidence is in conflict and requires a resolution of credibility issues, or if there are two equally plausible interpretations of the contractual language in light of the extrinsic evidence, the interpretation of the contract presents a question of fact that precludes summary judgment. (*Winet v. Price*, *supra*, 4 Cal.App.4th at p. 1166; *Wolf v. Superior Court*, *supra*, 114 Cal.App.4th at p. 1351.)

11

B.     *PLR's Proffered Extrinsic Evidence as to Intent*

As we have noted, GWA objected to the portions of Teplin's and Hekmat's declarations related to their understanding of how the Agreement would operate, and the trial court sustained those objections.  PLR did not challenge the court's evidentiary rulings in its appellant's opening brief.  Therefore, PLR has forfeited any issue regarding the correctness of the trial court's ruling, and we will not consider that evidence in reviewing the summary judgment.[3]  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [court reviewing summary judgment does not consider evidence to which objections were made and sustained]; *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625 [party's failure to challenge rulings sustaining evidence requires appellate court to exclude that evidence when reviewing summary judgment].)

In any event, the extrinsic evidence PLR relies upon does not assist PLR, because as we discuss, *post*, the Agreement is not reasonably susceptible to the interpretation PLR urges.  Therefore, even if PLR had properly challenged the trial court's evidentiary rulings, we would conclude the evidence is inadmissible to prove the meaning PLR asserts.  (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 ["'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is . . . whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible'"]; *Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 500 ["Parol evidence

---

[3]     Although PLR purported to challenge the evidentiary rulings in its reply brief, that challenge came too late.  (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3 ["Consistent with well-established authority, absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief"].)

12

is not admitted to show that the appellants 'meant something other *than* what they said but by showing what they meant *by* what they said'"].)

C.      *The Effect of Settlement of the Hopkins Litigation*

As noted, paragraph 3.13 of the Agreement states in relevant part:  "At the final conclusion of this Litigation [i.e., the Hopkins litigation] and/or Arbitration, whichever is later, whether by verdict and award, dismissal, summary judgment, appellate ruling (or, as applicable, expiration of time to appeal), or any other final proceeding or process, and after final payment, if applicable, of any sums deemed due and owing from GWA to PLR pursuant to any judgment or arbitrator award, then, within thirty (30) days thereafter PLR agrees to execute a release" of all claims against GWA.

PLR argues that this provision cannot be interpreted to require PLR to release GWA if the Hopkins litigation is settled, because the provision "does not mention 'settlement' as a possible means for achieving a 'final conclusion.'"  PLR may be correct that a settlement, by itself, is not encompassed in paragraph 3.13's list of possible means for achieving a final conclusion of the Hopkins litigation. But a *dismissal* certainly is.  There is nothing in the language of the Agreement to suggest that a dismissal resulting from a settlement is to be treated any differently than any other pretrial dismissal.  Thus, the dismissal of the Hopkins litigation following a settlement constitutes a "final conclusion" under the plain language of paragraph 3.13.

D.      *Arbitration to Allocate Liability and Payment as Preconditions for Release*

PLR contends that paragraph 3.13 includes two preconditions for its obligation to release GWA to arise:  an arbitration to determine the allocation of liability as between PLR and GWA, and payment by GWA of its share of liability.

13

To support its contention that arbitration is a precondition to the release, PLR points to the opening language of paragraph 3.13: "At the final conclusion of this Litigation and/or Arbitration, whichever is later." It argues that paragraph 3.13's use of the phrase "whichever is later" means that the obligation to release GWA arises only after the Hopkins litigation has been finally concluded *and* an arbitration to resolve apportionment issues has taken place. We disagree, because this proposed interpretation cannot be reconciled with the language in paragraph 3.13 or with the Agreement as a whole.

The Agreement contains two arbitration provisions. One provision (paragraph 3.26) requires arbitration of any disputes arising out of or relating to the Agreement itself. The second provision (paragraph 3.11) allows either party to demand arbitration on certain specified issues related to the allocation of liability, but only after a trial in the Hopkins litigation.[4] There is no provision in the

_____

[4] This provision states, in relevant part: "In the event of a trial arising from this Litigation, the Parties agree to use their best efforts to submit a special verdict form that will enable the trier of fact to apportion the percentage of liability, if any, among PLR, GWA, Hopkins, any other party to the Litigation, and any other person or entity. However, in the event that: (1) the verdict, as approved and/or ordered by the Court, fails to apportion liability ('Issue 1'); (2) a special verdict is refused by the court so that apportionment of liability if any can not be ascertained from the verdict ('Issue 2'); (3) GWA or PLR dispute the allocation of liability percentages or the amount of damages awarded by the trier of fact ('Issue 3'); (4) PLR contends that it is entitled to indemnity from GWA because PLR has been damaged by acts, errors or omissions of GWA asserted in the Litigation that resulted in apportionment of liability or damages to GWA that was then charged to PLR and unpaid by GWA (such as, for example, liability for a portion of PLR's damages, or liability for a portion of Hopkins' or any other parties' damages, that are charged to PLR, and result in a loss of recoverable damages to PLR that are unpaid by GWA) ('Issue 4'); or (5) PLR contends that it is entitled to an award of damages incurred by PLR from a possible finding that PLR is not the prevailing party entitled to fees and costs because of the effect of apportionment of GWA's liability, if any, for damages to Hopkins or any other party or PLR ('Issue 5'), then the Parties agree that they may demand binding arbitration as provided herein. Any such arbitration demand shall be made within thirty (30) days of the final conclusion of this Litigation, whether by verdict and award, dismissal, summary judgment, appellate ruling (or, as

14

Agreement that provides for arbitration of issues regarding allocation of liability if no trial has taken place.

Nothing in the Agreement requires that there be an arbitration if there are no disputes arising from the Agreement and no demand to arbitrate the issues specified in paragraph 3.11. Thus, paragraph 3.13 refers to the final conclusion of the Hopkins litigation "*and/or*" arbitration. In light of the limited nature of the arbitration provisions in the Agreement, and the use of the term "and/or," we conclude that paragraph 3.13 cannot reasonably be interpreted to require the final conclusion of an arbitration as a precondition to PLR's obligation to provide a release to GWA.

Nor can paragraph 3.13 reasonably be interpreted to require a payment by GWA to PLR as a precondition to PLR's obligation under any circumstance. Paragraph 3.13 is very specific about when payment is a precondition: when "sums [are] deemed due and owing from GWA to PLR pursuant to any judgment or arbitrator award."

E. *Termination of the Agreement*

As noted, PLR argued below that regardless whether its interpretation of the Agreement was correct, it was not obligated to provide a release to GWA because

---

applicable, expiration of time to appeal), or any other final proceeding or process. In any event it is the Parties' intent that the arbitration shall not occur until any judgment and award of fees and costs are final. [¶] . . . [¶] If demanded, the binding arbitration procedure shall proceed in two separate phases [with the first phase limited to Issues 1, 2, 3, and/or 4, and the second phase limited to Issue 5]."

Although the reference to dismissal and summary judgment would seem to suggest that a demand for arbitration could be made even if there were no trial, the "Issues" that may be arbitrated could only arise if there had been a trial. It appears the inclusion of "dismissal" and "summary judgment" was a drafting error.

it withdrew from the Agreement, which terminated any such obligation. In finding that PLR's withdrawal was not timely, the trial court determined that, because the termination provision was set forth under the "Conflict Waiver" section, it could "only be reasonably interpreted to apply while there was a potential conflict due to the pending [Hopkins litigation]." It concluded that PLR's attempted termination of the Agreement was ineffective because the Hopkins litigation "was substantively over" at the time it gave notice of its withdrawal (which the court stated was "at or near the time that the entire action was dismissed (April 17, 2012)"), and therefore the right to termination no longer applied.

On appeal, PLR contends the trial court's finding that its withdrawal was not timely was based upon on incorrect interpretation of the Agreement. It argues that the trial court's reliance on the fact that the termination provision was located under the "Conflict Waiver" heading was improper because the Agreement states that "[h]eadings in this Agreement are for convenience only, and they are not a part of this Agreement, nor shall they be used in the construction of this Agreement." PLR also argues the language of the Agreement does not support the trial court's conclusion that a withdrawal notice had to be given before the "substantive conclusion" of the Hopkins litigation. Notably, PLR does *not* argue in its appellant's opening brief that the trial court erred in finding that the Hopkins litigation was dismissed on April 17, 2012. Rather, it disingenuously states that "[t]he trial court did not reject PLR's contention that the 'final conclusion' of the *Hopkins* Litigation did not occur until June 12, 2012, after PLR's 'withdrawal from the [Agreement] was complete,'" citing the portion of the judgment that listed the evidence PLR proffered (regardless whether it was admitted) in opposition to the summary judgment motion.

In their respondents' brief, GWA does not address the trial court's reasoning for finding that PLR's attempted withdrawal from the Agreement was untimely.

16

Instead, it argues that the attempted withdrawal was untimely and ineffective because the last remaining cross-complaint of the Hopkins litigation -- PLR's cross-complaint against Kent -- was dismissed at PLR's request on April 17, 2012, and PLR did not give its 30-day notice of withdrawal from the Agreement until May 10, 2012. Thus, even if paragraph 3.13, which gave the parties 30 days to agree on the form of the release (after which the Agreement would operate as a release), is construed to mean that PLR's release obligation would not take effect until 30 days after the final conclusion of the Hopkins litigation, the effective date of PLR's withdrawal was well past the effective date of PLR's release obligation.

In its reply brief, PLR argues, for the first time, that the April 17, 2012 minute order did not result in the final conclusion of the Hopkins litigation because the minute order was not signed by the court, as required by Code of Civil Procedure[5] section 581d, and because the court retained jurisdiction under section 664.6 to enforce the settlement between PLR and Kent. We disagree.

Although PLR is correct that section 581d requires that dismissals ordered by the court be in written form and signed by the court,[6] the dismissal at issue here was not a court-ordered dismissal. Rather, it was a voluntary dismissal at the request of the parties, which is governed by section 581. A request for dismissal is effective upon tender of the request. (See, e.g., *Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.* (1988) 202 Cal.App.3d 921, 931; accord, *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869, 876.) Therefore, the fact that

---

[5]     Further statutory references are to the Code of Civil Procedure.

[6]     Section 581d provides: "A written dismissal of an action shall be entered in the clerk's register and is effective for all purposes when so entered. [¶] All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes, and the clerk shall note those judgments in the register of actions in the case."

17

the April 17, 2012 minute order was not a signed order did not render the voluntary dismissal ineffective.

Nor did the court's retention of jurisdiction under section 664.6 mean that the dismissal was not the final conclusion of the Hopkins litigation. Section 664.6 merely "provide[s] a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) Under the statute, the court "enter[s] judgment pursuant to the terms of the [parties'] settlement," but it may, if requested by the parties, "retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6.) In other words, under section 664.6 the underlying lawsuit is finally concluded because judgment is entered; the only disputes over which the court retains jurisdiction are disputes regarding the terms and performance of the settlement agreement.

Finally, even if PLR's and Kent's joint request for dismissal and the April 17, 2012 minute order did not meet the requirements of sections 580, 581d, or 664.6, and therefore the minute order could not be deemed a dismissal, the parties' request for dismissal and the court's acceptance of that request nevertheless fell within paragraph 3.13's "final conclusion" catch-all, i.e., "any other final proceeding or process," because it demonstrates the parties' and the court's intent, as a result of the "proceeding or process" of mediation that resulted in a settlement, to conclude all proceedings regarding issues raised in the Hopkins litigation.

Because we find the undisputed evidence establishes that the Hopkins litigation was finally concluded on April 17, 2012, we conclude that PLR's attempted withdrawal from the Agreement on May 10, 2012 -- which would not take effect until June 9 (30 days later) -- was ineffective to terminate the Agreement. Therefore, we conclude PLR's claims against GWA are barred by the

18

release provision of the Agreement, and the trial court properly granted summary judgment in favor of GWA.

## DISPOSITION

The judgment is affirmed.  Defendants Gin Wong Associates and Millard A. Lee shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:




EPSTEIN, P. J.




MANELLA, J.

19